UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>   v.<br><br>VANESSA TACHIQUIN,<br><br>                    Defendant. | Case No. 19-cr-04452-BAS-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE (ECF Nos. 63, 75)** |

On May 13, 2020, in the midst of the coronavirus pandemic, the Court sentenced Ms. Tachiquin to 24 months in custody, of which she has served approximately 15 months. (ECF Nos. 53, 54.) Ms. Tachiquin now moves to reduce her sentence to time served, arguing that her medical conditions place her at severe risk if she were to re-contract COVID-19 and that she has received inadequate care for her mental health conditions. (ECF No. 63 ("Defendant's Motion"); ECF No. 75 ("Defendant's Supplemental Motion").) The Government opposes. (ECF No. 76 ("Government's Response").) For the reasons stated below, the Court **DENIES** Ms. Tachiquin's request.

**I.    BACKGROUND**

On October 8, 2019, Ms. Tachiquin drove through the Port of Entry from Mexico to the United States in a Jeep in which 26.46 kilograms of methamphetamine was hidden. (ECF No. 31 ("PSR") ¶¶ 3–15.) Ms. Tachiquin later admitted that she agreed to smuggle

drugs in exchange for $1000.  (*Id.*)  She has a prior arrest in 2017 for possession of a controlled substance for sale and transportation of a controlled substance, but apparently the charges were not pursued.  (PSR ¶ 30.)

Due to the COVID-19 pandemic, Ms. Tachiquin has never been designated to a prison facility and has been transferred to various temporary jail facilities.  She is currently being housed at Florence CCA, which does not report the number of COVID-19 cases at the facility. (Defendant's Supplemental Motion, Exh. C.)  Ms. Tachiquin, who is 33 years old, has asthma, which ten years ago resulted in her hospitalization, suffers from psoriasis, and has a BMI of 36.4.  (PSR ¶ 38; Defendant's Supplemental Motion, Exh. A at 7.)

Although Ms. Tachiquin has never been diagnosed with any mental health conditions, she asserts that she suffers from anxiety and depression while in custody. (Defendant's Supplemental Motion.)  As of July 22, 2020, her medical records reflect that Ms. Tachiquin was experiencing grief following the death of her grandmother.  She denied being suicidal, but, according to her medical records, "[d]iscussed the natural grieving process allowing yourself to grieve your own way.  Discussed relaxation and deep breathing techniques to help calm emotions.  [She] was offered additional counseling and she agreed [to contact mental health] if she wished to talk."  (Defendant's Supplemental Motion, Exh. A at 18.)

On July 19, 2020, Mr. Tachiquin was referred for a COVID-19 test because she had reported fatigue and shortness of breath.  (Defendant's Supplement Motion, Exh. A at 12.) At that time her complaints of shortness of breath had resolved and her "breathing [was] regular and unlabored.  Lung sounds clear." (*Id.* at 16.)  Nonetheless, on July 28, 2020, her test came back positive for COVID-19.  (*Id.* at 12.)  By August 3, 2020, she was reporting no symptoms for the past seven days, and she is currently listed as "recovered." (*Id.* at 1, 13.)  She did report suffering from a cough with phlegm on December 15, 2020, but her lungs were clear, and she was given medication to help with the cough.  (*Id.* at 20–23.)

On December 1, 2020, Defendant requested compassionate release from the Warden at Florence CCA.  (Defendant's Supplemental Motion, Exh. D.)  She received no response to her request.  (*Id.*)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States,* 560 U.S. 817, 825–26 (2010).  A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*  In other words, Ms. Tachiquin must fully exhaust her administrative remedies from the Warden of the facility where she is being housed before she turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion.  In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden.  In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Ms. Tachiquin presents evidence that she requested compassionate release from the facility where she is being housed on December 1, 2020, and that she has received no response to this request.  (Defendant's Supplemental Motion, Exh. D.)  Thus, Ms. Tachiquin has exhausted her administrative remedies under the second route.

### B. Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(a). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

First, the Court acknowledges what ought to be obvious by now: COVID-19 is posing a serious threat throughout the United States, but particularly within the Bureau of Prisons ("BOP") system. Although the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has made it difficult to keep the virus contained. Clearly, the BOP was unsuccessful at keeping Ms. Tachiquin protected, and by July 2020, she had tested positive for the virus.

Additionally, Ms. Tachiquin suffers from asthma and is obese, both conditions that could place Ms. Tachiquin at higher risk from the virus. *See* Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020) ("Having moderate-to-severe asthma might increase [one's] risk for severe illness from COVID-19."); *id.* (providing that having a BMI as high as Ms. Tachiquin's "increases [her] risk of severe illness from COVID-19").

However, the sad reality is that about half the U.S. population is obese. *See United States v. Aguilar*, No. 18-cr-00275-LHK, 2020 WL 6081779, at *5 (N.D. Cal. Oct. 5, 2020) ("As of 2017-2018, 42.4% of American adults are obese.") (citing Craig M Hales et al., *Prevalence of Obesity and Severe Obesity Among Adults, United States, 2017-2018*, CDC (Feb. 2020), https://www.cdc.gov/nchs/products/databriefs/db360.htm). Even more starkly, "[i]n 2015, the Bureau of Justice Statistics reported that in 2011-2012, 74% of

prisoners and 62% of jail inmates were overweight, obese or morbidly obese." *Id.* (citing U.S. Dept. of Justice, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12* (Oct. 4, 2016), https://www.bjs.ogv/content/pub/pdf/mpsfpji112.pdf). Assuming this is still the case in 2020, if obesity qualified as an extraordinary and compelling reason for a sentence reduction, the vast majority of prisoners would currently be eligible for release.

Additionally, Ms. Tachiquin had COVID-19 last July and has since recovered. (Defendant's Supplemental Motion, Exh. A at 1.)  Courts have split on the issue of whether an individual who has recovered from COVID-19 can still show extraordinary circumstances.  In *United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020), the court found "we do not know to what degree or duration persons are protected against reinfection . . . following recovery from COVID." *Id.* (citing CDC, *Clinical Questions About COVID-19: Questions and Answers*, http://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (then last updated June 4, 2020)). "People could be immune from reinfection entirely, partially, or not at all." *Id.* (citing Paul Kellam & Wendy Barclay, *The Dynamics of Humoral Responses Following SARS-Cov-2 Infection and the Potential for Reinfection*, J. Gen. Virology (May 2020), at 1; Erin Garcia de Jesus, *New Data Suggests People Aren't Getting Reinfected with the Coronavirus*, Science News (May 19, 2020), http://www.sciencenews.org/article/coronavirus-COVID-19-reinfection-immune-response; Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Not For Long*, N.Y. Times, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (then last updated June 20, 2020)).  Thus, the court concluded the possibility that a defendant might get re-infected and, the next time around, suffer more severe consequences, was too speculative to warrant relief. *Id.*

On the other hand, in *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020), the court concluded, "while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists."  As the

court points out in *Yellin*, the medical evidence is still uncertain as to the effect of a recovery on future infection. Ultimately, the court in *Yellin* concluded: "The Court does not presume to have more information than the experts researching this virus. Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin." *Id.*

Given that Ms. Tachiquin would be an outlier if she was reinfected with the virus and had a stronger reaction the second time around, and that her primary risk factors are her obesity and her asthma (that "might" cause a more severe reaction), the Court is not convinced that the threat of COVID-19 constitutes "extraordinary and compelling" circumstances justifying Ms. Tachiquin's release.

To the extent Ms. Tachiquin argues that she has received inadequate mental health or other medical treatment while she is in custody, the Court disagrees. The medical records provide evidence that Ms. Tachiquin has received adequate medical care, including mental health care, while she has been in custody. Additionally, as discussed below, the § 3553(a) factors do not support Ms. Tachiquin's early release from custody.

### C. Section 3553(a) Factors

In effect, Ms. Tachiquin is simply seeking a reconsideration of her original sentence. Ms. Tachiquin was sentenced in May 2020—in the midst of the coronavirus pandemic. At that time, the Court gave serious consideration to the risks facing Ms. Tachiquin in custody, including the fact that she was asthmatic, that she had a history of hospitalization for that illness, that she was obese and that she suffered from psoriasis. (*See* PSR ¶ 38.) For those reasons, the Court determined a downward variance was appropriate, and Ms. Tachiquin received a 24 month sentence instead of the 37 months recommended by the Government or the 30 months recommended by Probation. (PSR; ECF Nos. 43, 44.) The only thing that has changed since that sentencing date is that Ms. Tachiquin has contracted and now recovered from the coronavirus. This factor alone is insufficient to change any of the §

3553(a) factors considered by the Court at the time of sentencing. The 24 month sentence remains the appropriate sentence considering all of the § 3553(a) factors.

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Reduce Her Sentence Pursuant to the First Step Act. (ECF Nos. 63, 75.)

**IT IS SO ORDERED.**

**DATED: January 14, 2021**

Hon. Cynthia Bashant
United States District Judge